Mr. Gant. Mr. Chief Justice, and may it please the Court, Section 2B of the Gunn-Lake Act is unconstitutional because it is incompatible with several well-established strands of this Court's separation of powers jurisprudence, as well as with Article III itself. With Section 2B, Congress directed the federal courts to dismiss a pending case otherwise properly before the courts. As a consequence of that directive to dismiss, with respect to Mr. Patchak's case, the courts were prevented from performing their constitutionally assigned responsibilities to decide cases before them and to say what the law is in the context of deciding those cases. Section 2B is precisely the kind of legislative review of judicial decisions that the framers rejected when they designed the Constitution. And all of the other cases that were to the last few words of this statute, or are you referring more broadly? I'm referring to the last, the words that refer to dismissal itself. Right. And shall be promptly dismissed. Yes. And then also Are you suggesting that if those five words were not in the statute that the case would come out differently? I am not suggesting that. I think it would still have come out differently. For example, if you dropped the reference to dismissal but left maintain, the result would be the same. The same would be true if there had been a removal of judicial review. In other words, if two, if the statute had contained just 2A but not 2B, same result? No. That, I understand that to be a different question from Justice Kagan's. If 2A were the only part of the statute, we had no 2B, 2C is not at issue here. So if we had 2A only, we wouldn't be here arguing that there was a separation of powers violation. Part of the problem here But if you had 2B that finished, just shall not be filed or maintained in a Federal court, full stop, you're saying that would be the same statute as the one we actually have. It would still be unconstitutional. Yes. Now, the omission of the shall be dismissed language is not without significance. And if I may, I would like to explain. The direction to dismiss is a quintessential judicial function. It's not surprising that Black's Dictionary in defining dismissal refers to it as especially a judge's decision to stop a case. That's But what do you do with the McArdle case? McArdle was the fact that a statute strips jurisdiction from a court doesn't mean that it's immunized from review under separation of powers. So the touchstone has to be, and the relevant strands of the separation of powers jurisprudence at issue here are really two parts. One is, has Congress exercised the judicial power and or has Congress prevented the courts from fulfilling its constitutionally assigned responsibilities? I submit that both have occurred here as a result of what is in the actual 2B, but the same result would arise if you omitted just the words shall be dismissed. If this is just a jurisdiction-stripping statute, could you just say as succinctly as possible what the rule is that you would like us to adopt? What is the separation of powers rule that you would like us to adopt with respect to a purely jurisdiction-stripping statute? Well, I want to be directly responsive to your question, but I also want to say, and I've made this observation in the briefs, I think the better view is that it is not jurisdictional. I'm happy to elaborate on that later. But if we assume that it's a jurisdiction-stripping statute. Well, on that, suppose, following up on the initial questions, if all that 2B said was that an action relating to this land shall not be maintained in a Federal court, would you say that is not a jurisdiction-stripping statute? That certainly looks more like a jurisdiction-stripping statute. The reason I say that the better view is it's not jurisdictional is at least twofold. One is, and I've been accused by some colleagues of taking ARBAW too seriously, but this Court went out of its way in ARBAW to announce to the world and to Congress in particular that it wanted a new rule, that if a court wanted a statute to be viewed as jurisdictional, it needed to clearly say so. This statute doesn't say anywhere in its text, in its headings, that it's jurisdictional. In fact, 2B, the section we're discussing that arguably strips jurisdiction from the courts, uses the phrase no claims. My research may have been faulty, but I couldn't find a single case using that language in framing a jurisdictional statute. Alitoso, if one of the things that 2B does is to strip jurisdiction, and if shall not be maintained is a jurisdiction-stripping provision, then I don't see how you can win unless you have a rule that applies to a jurisdiction-stripping statute. Maybe there are other things in this statute that are vulnerable, so they could be severed. So to go back to the question I asked, if this is a statute that takes away Federal Court jurisdiction, what is your separation of powers rule? The rule I submit the Court should adopt is if a statute is deemed as properly – is properly construed as a jurisdiction statute, it is still subject to separation of powers analysis. That much is clear from Klein. However, whatever else about the case might be puzzling, Klein clearly establishes that the mere fact that Congress affixes the label jurisdiction to a statute doesn't immunize it. So then we return to our touchstone principles here. Has, through this jurisdiction statute, Congress exercised the judicial power and or has it prevented the courts from fulfilling their constitutionally assigned responsibility? Yes, but when – as succinctly as you can, Congress violates the separation of powers when it deprives the Federal courts of jurisdiction in this circumstance. And what is the circumstance? The circumstance is when it is directly, overtly deciding a case or effectively deciding a case, rather than making new law and leaving it to the courts to apply  Well, let's take – which is not fictional – suppose Congress enacts a statute that says Federal courts shall not have jurisdiction over cases involving prayer in school. Constitutional? I think that raises serious but somewhat different questions. Part of what's offensive here to the separation of powers principles is that Congress is directing the outcome in a case. It could be a set of cases. And I submit, by the way, looking to Bank Marcosi, if there had been 1,000 cases just like Patrick's, I think the outcome would be the same. So the fact that it was one case is, I think, probative of assessing whether or not the Congress is actually deciding a case rather than actually making the law to be applied by the courts. So, I mean, I thought that you were suggesting a rule that said, well, when you direct one case, that's unconstitutional. But now you've just said you're not saying that. So again, coming back to Justice Alito's question, I mean, we know that Congress can alter the jurisdiction of the Federal courts. And we know that Congress can alter that jurisdiction and apply it to pending cases. We've said that over and over again. So what makes – what would make this unconstitutional if we assume that this is a jurisdiction stripping statute? Because what Congress has done is affect – directly here, but it could be indirectly – dictated the outcome of a case without changing the law. So, Mr. Gannon, it's that last clause. Well, the law is the jurisdictional law. That's what Congress is changing. Congress is changing jurisdiction. In so doing, Congress is changing the law. We haven't said Congress has to change, you know, substantive law. Here, Congress is changing jurisdictional law. It's saying, you know, yesterday you had jurisdiction over a certain category of cases. Today you don't. Now, why is that unconstitutional? Or when is that unconstitutional? That is unconstitutional when in the – under the guise of changing the rules with respect to jurisdiction, the Court is effectively deciding the case and then not letting the courts apply the new law either. So both things have occurred here. So in Bank-Marcazi and in Robertson, the reason why those survived separation of powers scrutiny was because they changed the law and they left to the courts to apply to new cases. You have the exact opposite here. So, Mr. Gannon, if I understand it, the answer to the question, I think, is that last clause, the dismiss – ordering the courts to dismiss the claim, that up to that point shall not be filed or maintained. If that's jurisdictional, as I understand you in your amici, you're okay with that. It's the directing, the dismissal. But if that's the only beef we have, is that really a beef at all? Because that's a natural consequence of a jurisdiction-stripping statute, as McCardle itself, as Justice Ginsburg pointed out, right? So there's nothing left. I think it's almost a virtual quote from McCardle, right? There's nothing left to be done but dismiss. So where's the real beef here? Justice Gorsuch, I think what the – collectively what the court's cases instruct us is that we shouldn't stop the inquiry at the label. We know that from Klein. We know that from other cases. So this case isn't framed as jurisdictional. But if we assume that – Assuming it's jurisdictional and all you're left with is this complaint about the last clause, why should we care? We should care because then what Congress is doing is it's – it's given carte blance to the outcome of cases just by affixing the label jurisdictional. I thought you – in your response to Justice Kagan, you said it wouldn't make any difference if those last words were omitted, shall be dismissed. You would have the same objection. I would have the same objection. Let me be clear. With respect to pending cases – so the two words that are operative here with respect to pending cases are shall not be maintained and shall be dismissed. I'm not talking about the filed. So with respect to prospective cases, we're not arguing that Section 2B would be unconstitutional because it wouldn't implicate the – the strands of the separation of power jurisprudence that I was discussing. So it's with respect to pending cases where both the shall not be – may not be maintained and shall be dismissed are both operative. I don't think that's the question, Mr. Gant. I think the question is – and this was what I started with – would you be making the same constitutional argument if the last five words were not there? And I took you to say, yes, you would be making the same constitutional argument. And in so doing, you separated yourself from your amici, because I understand your amici, as Justice Gorsuch does, as saying that everything hangs on that last five words. And you're suggesting that not everything hangs on that last five words, that you would have the exact same constitutional objections if those five words weren't in the picture. Do I have you right? Yes. I think the fact that it includes the dismissal term is – makes it particularly pernicious, so I would say that's additional – pushing it even further beyond – It's like bad atmospherics. Well, but it's not just atmospherics. As I suggested earlier, I think there's an argument to be made that the direction from Congress to the courts to dismiss a case is telling the courts how to perform their duties in an impermissible way. But I also – But then you do get, again – and I think that this is the underlying premise of Justice Gorsuch's question. So take out the last five words, and you were trying to explain why what then just seems a jurisdiction-stripping statute is unconstitutional, in that against the backdrop of very consistent precedent that we have that says that Congress can take away the jurisdiction of the Federal courts and can do so in a way that affects pending cases. And so why and when is that unconstitutional? Because you have to pierce the label of jurisdiction and return to the basic principles, which are, is Congress exercising judicial functions, or is it preventing the judiciary from carrying out its actions? It seems that we've been replicating what, among lawyers anyway, is the famous dialogue between Professors Wexler and Hart about whether Congress can achieve unconstitutional objectives by preventing Federal courts from adjudicating claims that those provisions are unconstitutional. You know, during the Civil Rights era, there were a lot of proposals in Congress that said Federal courts have no jurisdiction over any case in which busing is sought as a remedy. And those types of proposals are consistently submitted whenever Congress attempts to achieve an unconstitutional result by depriving the Federal courts of jurisdiction. So I would have thought your answer is, is I would have thought you would have taken the position that I understand to be ascribed to Professor Hart in the dialogue, which is that that is an indirect way of achieving an unconstitutional result and is subject to the same objection. That is my position. Counselor, I want to switch from personal jurisdiction to sovereign immunity, in part for the reasons that the Chief Justice is talking about, okay? Yes. In Patchak 1, I took the position that the court got sovereign immunity wrong. And basically, I argued, the majority disagreed, that the Quiet Title Act really granted immunity. And the majority disagreed and said this had to do with APA waiver of immunity. I look at statutory history, and this new act, the Reaffirmation Act, was in the context of that dispute in that case. And what Congress did was settle the question, which I believe it's entitled to do and is not unconstitutional. It ratified the acts of the Secretary's taking of this land. And by that act, implicated the Quiet Title Act. And so if it did that, I see this, and I don't understand why it's not, that waiver of sovereign immunity that the court did not recognize in Patchak 1. And I raise this for two reasons. One, I do think there's a difference between the Congress coming in between two private parties and directing a result in favor of one private party. I think that's a quintessential separation of powers question, and a very, very serious one. But I think there is something fundamentally different about suits involving the government. Because sovereign immunity, or any suit against the government, is a matter only of largesse, and the government's voluntary choice, we have repeatedly through the centuries said, the government can at any moment take away its sovereign immunity. It can take away that niceness of giving you the immunity. So I see the potential of less of a problem with separation of powers if the government has withdrawn sovereign immunity than it directing the outcome between private parties. I would be really frightened if we let the government do that. But, so, given that statutory history, the only issue that was left alive or was at issue in Patchak 1, given that the waiver of sovereign immunity that was taken away tracks the APA language. The APA's language says that a suit can be maintained against the government. Why isn't this a sovereign immunity case? Why am I dealing with personal jurisdiction at all, or separation of powers questions at all? Because with respect to both the text of the Gun Lake Act, as well as the statutory history, I submit that the restoration of sovereign immunity did not exist. The text nowhere mentions sovereign immunity. If you look at- We've never said it had to. Well, it doesn't have to, but there are no other indicia, I submit, that suggest- No, the statutory history indicia. Well- The whole fight in Patchak 1 was over the existence or nonexistence of sovereign immunity. Given that, and of course the statutory history is to some extent in the eye of the beholder. I look at it and I see, given the history that you've just outlined, that if what Congress had intended to do was to restore sovereign immunity, there would have been more evidence of that. It wasn't mentioned anywhere. In any of the hearings, it wasn't mentioned in the House or Senate reports. It wasn't mentioned- Well, why wouldn't, wouldn't, since Patchak turned on this Court's holding sovereign immunity had been waived, and now Congress, using the APA words, and the APA itself doesn't say sovereign immunity, so the APA withdrew the immunity, and this, using the same kind of language, restores it. Why isn't that the appropriate way to look at this case? What did Congress want it to do? The, we said sovereign immunity is waived. They said sovereign immunity is not waived. I take Congress at its word in what it intended to do, and the D.C. Circuit has said the same, which is to void the case, to make it go away, to direct dismissal against Patchak and for Zinke. That's what, that's what the statute says. That's how the D.C. Circuit, I think, properly understood it. If this suit had proceeded to a conclusion, would, and Patchak prevailed, would he be entitled to costs? He might be, and that's certainly one of the things that would have to, there are a number of things that would be addressed on remand. And for the statute, A and B are not severable, and so on. Kennedy, I'm wondering if it helps your position to say that the Congress is stripping him of certain rights that he had because of the litigation. Well, there's no question. I mean, we'd have to go back on remand in addressing the question of entitlement to costs and others, the entitlement to a declaratory judgment, the meaning of 2A. What Congress. But when you say 2A, imagine that was the only statute. I thought your claim, and imagine as well that 2A is in fact constitutional. And Congress can say in 2017 that when we took this into Federal trust territory, Indian trust territory, that was constitutional. That's what it does. All right. If that's constitutional to do that, do you have any case left? We do. We do have a case. What's the case? Leaving aside this, am I assuming that it's severable? You forget, B and C were never there. They just passed A. They just passed A. As I think I mentioned this earlier in response to another question, we would not be arguing that. I realize that, but my question is, would your client have a lawsuit? What would be the basis for it? Because I thought his basis was that the taking of the land into trust was not lawful under a particular act, because that just referred to tribes that were tribes in the 30s. Right? Now, this Act says, we don't give a care, we don't care about that. We say the government had the power to take it into trust anyway, and it had that power to take it into trust when it did. All right? So if that's the law, what is your client suing about? How can he win? For purposes of your question, I'm presupposing that that's the law. But one thing that happened here is no court could make that determination. No, no, but what's your argument? The argument is that, well, we would argue that it's not retroactive. We would argue that it's not retroactive. It says ratified. I understand. But we haven't briefed this, but I submit that there is an argument, a colorable argument to be made that ratification is, in a sense, an endorsement. If you look at on page 2 of the handbook. So your argument is that A applies only to taking into trust after the passage of the Act, the A, after the passage of A. In other words, it doesn't ratify the prior taking into trust of Indian land. That is an argument. There was an argument made below about the meaning of A before the district court when this was. Okay. That's your best argument? No, no, it's not. It is not. There was an argument made below that the ratification talks about taking the land into trust, but that doesn't mean that it authorizes all uses of the property. So there's a distinction between the land being into trust and there are others. Mr. Gantt, could I – I'm sorry to drag you around like this, but the Chief Justice asked you a question, and you indicated that you agreed with his understanding of when a jurisdictional statute violated the Constitution, and then you were interrupted. I just want to hear a little bit more about what you think of his question. Sure. I hope I have it firmly in mind, and at the same time, I want to try and answer some of your prior questions in the question. Well, I'm interested in that question, the Chief Justice's question, because he gave you a theory you said yes. Okay. But what does that mean, yes? Yes, why? What Congress cannot do is direct the outcomes of a case even under the guise of jurisdiction. Let's go back to the Smith-Winns hypothetical from Bank Marcosi. But I thought the Chief Justice's examples were instances in which a hypothetical statute deprived the Federal court of the opportunity to rule on violations of – on alleged constitutional violations, the same as the question that Justice Ginsburg gave to you, taking away jurisdiction over cases involving prayer in the schools or jurisdiction over equal protection violations. But this is a statutory case. It is, although it has – because there were – the Court in Patrick 1 addressed standing and sovereign immunity, which at least have constitutional dimensions. But there's no doubt about the fact that the underlying claims at issue in the pending complaint that's still operative are statutory in nature. The only thing I think – Justice, why don't you bring your case in State court? It doesn't say State court doesn't have a – I mean, you know, bring it in State court. I would have to think about whether we could do that. Well, how can the tribe be sued in State court? General jurisdiction. Could the Federal government be sued in State court? You can sue it. Yeah. I'm asking you. I don't want to get in the way of a good discussion. But I suppose the question is – I honestly don't know the answer. I mean, Justice, in a case of the anti-busing cases, there's a constitutional violation that Congress is trying to insulate from a view, and that's the separation of powers claim. And I took your question to be that these were – not that these were identical situations, this case and the situations that Mr. Chief Justice posited, but that they were close cousins. And to go back to a question, to try and more directly answer your question, Justice Gorsuch, and I want to do save a few moments for rebuttal, if a statute said, we think Smith should win, and therefore, we determine that the courts shall not have jurisdiction, that can't – the fact that it says it's jurisdictional cannot possibly save it from a separation of powers scrutiny and analysis. And this is substantially similar to that situation. So why is it substantially similar to that situation? That makes it sound like it's because it's about a single case. But you said that that wasn't your theory. So what is your theory? We could change it to 10 Smiths win, or in every case of Smith v. Jones. It's not the number. It's the fact that Congress is directing the outcome, and it's saying that you win not because we've changed the law, and notwithstanding old law, because we know two things about the old law.  So why doesn't Congress always do that when it strips the Federal courts of jurisdiction over a category of cases? No. Because we have said that that applies to pending suits. So I guess the question is, why aren't you saying that every time we said that, we were wrong, that any time Congress changes the jurisdiction of the Federal court and it applies to pending cases, that that's a separation of powers issue? Because Schor and the other separation of powers cases of this Court counseled that we should take a functional, practical look at the particulars of the case. And in this case, unlike these hypothetical statutes, you have Congress clearly directing the outcome of a case where under old law this Court held that as case may proceed. The House report at page 2 said under existing law that putting the land into trust was likely unlawful. And the only thing that changed was Congress said this case goes away. Alitoson It sounds like this is just based on your analysis of Congress's intent. I mean, let's take a case that we had earlier this term under the Alien Tort Statute. I don't know whether you're familiar with it, but it provides jurisdiction in the Federal courts for a suit by an alien concerning certain torts. And we have the question whether a corporation can be sued. Suppose Congress were to pass a statute that says that no Federal court shall have an independent as a corporation. There are a limited number of cases involving that, pending cases. Would that be unconstitutional? We'd have to look at the particulars of the case and make a judgment based on the case whether Congress was directing the outcome of particular cases or was it functioning more in a legislative role. Well, it's certain — I'm sorry. Your light's on. Well, I'm here for you, but I would like to reserve — I would like to reserve a few moments for rebuttal, but I — Well, why don't you answer the — ask and then answer the question, and we'll afford you time for rebuttal. Thank you, Mr. Chief Justice. I was just following up on Justice Alito's, because you — you say directing the outcome of these cases, but any time Congress' jurisdiction strips, and that applies to pending cases, it does direct the outcome of those cases. Once upon a time, those cases could proceed. Now they can't. So Congress is directing the outcome of those cases in some sense that we've consistently held to be perfectly fine. We might have been wrong in saying that's perfectly fine, but we've said it a lot of times. Right. And this may be an example of what the Court has talked about in other contexts, where line drawing can be hard. Again, I'd step back and look at — ask the fundamental questions. Is — has the legislature overstepped its bounds, traversed the boundary between the legislative function and the judicial function in deciding how cases should be determined? Congress is entitled to try and affect the outcomes, but the process of how it does it very much matters. And this is about, as in egregious circumstances, I can imagine of Congress actually dictating the outcome of a case by saying you shall — must dismiss, without changing the underlying law, and leaving it to the courts to apply in future circumstances. Thank you, Mr. Chief Justice. Thank you, counsel. Ms. O'Connell. Mr. Chief Justice, and may it please the Court. The United States took title to the Bradley property in 2009, but the tribe's operations on that land have been subject to great uncertainty ever since then, nevertheless. Part of that uncertainty stems from this Court's decision in Pat check one, which and concluded that the Quiet Title Act did not bar Petitioner's challenge to the trust status of this land. The Court acknowledged in Pat check one that barring claims like Petitioner's is within Congress's legislative power. Through the Gun Lake Act, Congress did a couple of things. It eliminated any doubt about the trust status of this land by ratifying and confirming the Secretary's action in 2005. And Congress also eliminated Federal court jurisdiction over challenges to the trust status of this property, thereby revoking the waiver of sovereign immunity in the APA. Suppose that Pat check relied on his interpretation of the law and had built a facility on a neighboring property that was just completely inconsistent with a casino so that he has some serious reliance interests. Would this case be any different? Well, there could be other constitutional concerns that may be implicated by Congress, by an act of Congress that takes away vested property rights or something like that, but they're not Article III interests. I don't think that it would violate the separation of powers for Congress to enact a law that was not in Congress's interest. Well, they're taking away his expectations when he built on the property. Well, then maybe he may be able to bring some other sort of a challenge like a takings challenge or something like that. I mean, this Court in Bank Marcossi. But Congress could still pass this statute? Yes. And, you know, the Court explained in Bank Marcossi there are other limits imposed in the Constitution on retroactive application of laws, and so perhaps if there was some kind of a takings claim, then regardless of Section 2B, the Petitioner could bring some sort of a suit to it. Maybe he has.  This is not, in certain respects, retroactive. Can he bring this case in State court against the Secretary? No. The Secretary's the answer is no. He could bring it, but the Secretary would still have immunity in State court. Okay. Has immunity in State court. So you can't bring it. So he has, let's imagine, under State law, a right to the peaceful enjoyment of his property. That's what he's worried about. Now, this B means, his best claim, he thinks, is not a constitutional claim that they've taken it away, but he sees that in the background. His best claim, he thinks, is to say that this law is not retroactive and that in the 1930s this tribe did not get, was not one of the ones that that act protected. That's his argument. With B, he cannot bring his claim in a State court. He cannot bring his claim in Federal court. And there's no other person anywhere who even is dreaming of such a claim. And therefore, what B, he says, does, as I understand it, is whatever general language they dress it up in, it is taking the only case that is likely to be brought into law, challenging the taking of this land into trust, and challenging this later statute as well, as being interpreted, you know, such and such, and throwing it out of court. So there we have, though they have excellent language and have tried to make it general, in reality, an act of Congress that does nothing other than take his case and throw it out of court. And that, he says, is for the Congress, the legislative branch, to enter into the judicial process and say, Mr. Plaintiff, in this case, you lose. Now, what is your answer to that? I've got a couple of answers to, specifically to the second part. On the first part, I don't know if in this case you're talking about some sort of a hypothetical relief that he's asking for, regardless of whether this is a statute that's retroactive or not in terms of taking the land into trust. Breyer. That's why I asked him the question. I take his answer to my question was, he retains certain arguments that A, is not sufficient to deprive him of the right to use his property because A does not move this tribe's land into trust as of prior to its enactment. I think it's something like that. Just to clarify, he's filed an APA claim, so the relief he's asking for is prospective injunctive relief. It doesn't actually matter if the statute is retroactive or not. But to answer the question about whether Congress is targeting one particular lawsuit in this case, a couple of responses. First is that this statute, although that seems to the Petitioner, and it may be the practical effect that because his is the only case that's pending, it's the only one that is dismissed, this is not a statute that is directed toward just Smith v. Jones, Smith wins. This is a case that applies to any suit related to that. Kagan. Kagan. Well, what if it were? What if the Congress has said the Secretary's decision to make the Bradley property is confirmed and David Patchak's suit shall not be maintained and shall be dismissed? I don't think there's an Article III problem with a case that takes away jurisdiction over even just one case. It may have other constitutional concerns. Footnote 27 of Bank Marcosi said maybe you could look to the Equal Protection Clause if it's just a statute that targets one person and it's irrational, there's no rational basis for it. But we don't see any separation of powers problem with taking jurisdiction over away over only just one case. In that case, does the government recognize any limit on Congress's power to decide the result in a pending case? To decide the result in a pending case, yes. What is it? If saying Smith wins isn't that what would an unconstitutional statute under the separation of powers look like from your viewpoint? Certainly Smith wins would be an unconstitutional statute because in that case Congress is just directing the result of a case without changing the underlying law. And so we should look at this and decide whether we think this is in substance different from Smith wins. I think that would be a perfectly fine way to do it. And I think this case is different from Smith wins in a variety of different ways. Is there a difference between Smith wins and there's no jurisdiction over Jones's suit? Yes. And therefore, Smith wins? Yes. I think that that is one of the differences between Smith wins and the statute that's going on here. Even if you think, even if you imagine a hypothetical statute that's just limited to Smith v. Jones, and again, this Court is, this statute is broader than that. So Congress has plenary authority to insulate itself from separation of powers arguments. A statute that says in any case in which a statute is alleged to violate the separation of powers, Federal courts have no jurisdiction. You think that's okay? No. And we haven't contested in this case that the Court can analyze 2B to determine whether it violates the separation of powers. That's what the whole case is about. Congress has not insulated 2B from that review, and the Petitioner is bringing a constitutional challenge to Section 2B. I think one of the – another one of the key – Well, Ms. O'Connell, it seems to me like a lot hinges on whether this is jurisdictional or not in response to all of these questions. And this Court in recent years has instructed that we're not going to lightly assume Congress is stripping jurisdiction. We need a clear statement. Arbaugh, Sebelius. And whatever might have been permissible before, Congress is now on notice that it needs to provide a clear rule. And this statute comes after those warnings from this Court. And help me understand why this statute is, in fact, jurisdiction-stripping without reference to old, past laws, but after Sebelius, after Arbaugh. Well, I think there's two cases we've cited that show that this is jurisdictional language. One of them I won't use to answer your question. You can't, right. Because it's older. Keen, right. But I think Gonzalez v. Thaler is another – another opinion where this Court took some language that's similar. We think it's like the appellate court equivalent. But you've also got Reed-Elsevier, which has similar language to this. Basically, no claim shall be maintained, or something like that, that we held wasn't jurisdictional in the copyright statute. In this statute, we think there's a lot of different things at play that make it a jurisdictional statute, one being that it says a case can't be filed or maintained in Federal court. If it just says it can't be maintained, maybe that could be something different. But if it's – it can't be filed even in the first place, that speaks to jurisdiction. Parties file things? That could be a claims processing rule, too, right? You don't file it. Although this – I mean, so those are the two cases that Petitioner cites in his opening brief. One is Sebelius, which is the claims processing rule, and then Arbaugh, which is the element of a causal action. Let's say it isn't jurisdictional. Let's say we're going to stick with our clear statement rule, and we find this non-jurisdictional. Don't we then have a real problem? Because a dismissal would be not 12b-1, but 12b-6, be on the merits, and have collateral consequences. And wouldn't that be a real problem for Article III? A couple of responses. I think requiring the jurisdictional clear statement rule in this case flips the Constitution. I'm asking you to put that aside in this question. I think the Court would want to invoke the constitutional avoidance principle to – I'm asking you to, again, assuming this isn't jurisdictional for purposes of this question, wouldn't we have a real problem? Because you are directing dismissal, and dismissal wouldn't be 12b-1. It would be 12b-6, and that has collateral consequences potentially. If the Court concluded that Congress was just telling the Court that it had to dismiss this case on the merits, then, yes, I think that may be a problem. But even if the Court doesn't think that – I mean, even if you don't use jurisdictional language or you think that the statute may not be taking away jurisdiction over a category of cases, which we think it is, I'd like to come back to the sovereign immunity point, which is that, you know, the APA provides the waiver of sovereign immunity, and that's the statute that the Petitioner has sued under. The APA doesn't apply if another statute precludes judicial review. Sovereign immunity is –  Can I ask you a question about the APA? The argument that has been raised on the other side is it doesn't – you don't need sovereign immunity waiver because sovereign immunity doesn't protect a Federal employee from a suit alleging that that employee acted in excess of statutory authority. So, I mean, what I suggested in the first part of this argument was we have – there is sovereign – sovereign immunity is not a bar. Congress says sovereign immunity is a bar, but the answer to that is, so what? We can sue a Federal officer and sovereign immunity wouldn't bar that. Justice Ginsburg, I think this Court's decision in Block v. North Dakota goes a long way to answering that question. In Block, the State was suing – bringing an officer suit because it was outside of the statute of limitations in the Quiet Title Act, and what the Court said was you can't just use an officer suit to get around the Quiet Title Act. Now that we have Congress's waiver of sovereign immunity in the Quiet Title Act, you have to comply with those statutory provisions. The same should be true of the APA. So if Petitioner could just bring an officer suit against Secretary Zinke for prospective injunctive relief, that would evisciate the final agency action requirement of the APA, the statute of limitations of the APA. Congress has given us its waiver of sovereign immunity in the APA, and when it enacts a statute like this, it has revoked it. Sotomayor, can you tell me what other actions in your judgment besides this one could be or would be filed relating to the land? Would a slip and fall no longer be permissible? So I think there are some questions about just how broad this statute is. We think it at least covers suits that relate to the trust status of the Bradley property or the Secretary's decision and Congress's decision to take it into trust. But any suit like that would be way past the statute of limitations. Who could even bring it? Well, it may be outside the statute of limitations now. I believe there was a regulation passed later in time that made the land a part of the tribe's reservation, which I guess there's questions about whether that could restart the statute of limitations. But, you know, now and also Congress has enacted 2A now. And so if somebody wanted to bring a challenge to that, then that would also be barred by 2B and there would be no question. Well, there wouldn't be any challenge to that. It does seem, I mean, you say, well, relating to could mean different things. And it could, but that would be for a court to decide. And it's not clear how they get to decide what relating means in light of 2B, which says if it does relate, it's dismissed automatically. And I guess I just don't understand how – well, you're saying it's an open issue, how broad Congress's determination that these cases shouldn't be in Federal court is? It's an open issue how broad 2A is, that any action – well, yes, that any action relating to the Bradley property can't be filed or maintained in Federal court. Roberts. Roberts. I have a sovereign immunity question. You know, that is the Federal Government sort of going nuclear. You know, they're – I'm like the king, you can't sue me because I can do no wrong. And it seems to me there's a real political accountability problem there, because this statute doesn't say anything about sovereign immunity. Even if the statute – And you didn't argue it even in the brief in opposition, if I'm remembering. Well, this is an argument that we presented to the court of appeals. The court of appeals said they didn't need to reach it because they decided that this was a jurisdiction-stripping statute. But even so, it's really just another way of getting you to the point that the court lacks jurisdiction over the case, that Congress has changed the law, and it takes you outside the scope of Klein. Can you point to any case in which we've held there was sovereign immunity where the statute said nothing, never mentioned either immunity or the United States as a party? Well, I – again, I think that in this context, it doesn't matter if the statute is broader than just precluding claims against the United States, because under the APA, what you're looking for in order to say that the APA doesn't apply is a statute that precludes judicial review. Well, how much broader is it? It's somewhat difficult to decide this case without having some idea what relating to here means.  I mean, I don't know that the statute really says that no action relating to the land – suppose that the tribe said anybody who has toxic waste anyplace in the country can bring it here and just dump it in a big pit. Would you say, well, the Federal Government couldn't bring a lawsuit about that? No. I think we would – Okay. So what does relating to mean?  It's the trust status of the land and the Secretary's decision to take the land into trust. So I think – And here in the trust, I'm on my own track here, but I know this question is fascinating, what we've been discussing, and it's right there in B, but I'm still stuck on A and why we really have to get to B. You said that all they've asked for is prospective relief. Correct. And as far as prospective relief, when this was passed in 2014, it certainly, in A, took the Indian land into trust. Yes. All right. That's what they're challenging, prospectively. What's the argument? Well, I don't – Petitioner hasn't brought challenges to Section 2A. It certainly hasn't brought any constitutional challenges to what Congress has done in Section 2A here. So we, as should, get into the most fascinating and difficult questions in what one of my – I heard once described as the coarse Federal courts, called darkness at noon. And the – but perhaps we don't have to in this case, fascinating though it is, because there is no claim under A that prospectively this land is not Indian trust land. That's – I think that's correct. Is that your view? Yes. You think that's correct? Under 2A, Congress has really exercised its own – Maybe we'll get it in a minute on the other side. Suppose in this case that about 80 percent of the litigation had been completed, no judgment yet, and suppose, assume, that had Patrick prevailed, he would be entitled to costs. Could the case be ordered dismissed so that he could no longer get those costs? If there's no – it depends on what basis that Congress is ordering it. Under this statute. Under – if Congress is taking away – If Congress is taking away jurisdiction, then no, I don't think the Court would have the authority to order costs. And he also wouldn't be a prevailing party if no judgment had been entered. Well, I'm assuming that he would have been a prevailing party. There was a substantial chance of it. And he would have been entitled to costs. But even though 80 percent of the costs have been expended, he – Congress could suddenly say he can't get them. The rule that this Court has laid out is that once a final judgment has been entered, that Congress can't undo that. And so any time up to – I mean, the Court's cases have said again and again that the Congress can enact jurisdictional rules and apply them to pending cases. So no, I don't think there's any separation of powers problem with such a – with such a rule. One other final point I'd like to make. The Petitioner argues that by enacting Section 2B, that Congress is taking away the Court's ability to interpret the law. But when it's a jurisdictional statute that Congress is enacting, a jurisdiction stripping statute, there's not going to be much left for the Court to do. There's cases from this Court that talk about whether there's something left for the Court to do and whether that's enough to give the Court a role in exercising its judicial role. Those cases are all trying to decide whether Congress has changed the law such that the case is taken outside the scope of Klein. When you have a statute like this one that takes away subject matter jurisdiction of the Federal courts and gets a category of cases off of the judicial agenda, the Court just has to determine whether this case falls within that category and then it should dismiss. If there are no further questions, we ask that the Court affirm. Roberts. Thank you, counsel. Mr. Shah. Mr. Chief Justice, and may it please the Court. I guess I'd like to start with Justice Alito's question, because I think it cuts to the matter what would be an administrable line in a separation of powers case. And the line that we would embrace is the line that the other side has offered in the Federal court scholar's amicus brief supporting the other side. And this is at page 15 of that amicus brief. It says, and this is relying on Professor Hart, it says, it is one thing to exclude completely the Federal courts from adjudication. It is quite another to vest the Federal courts with jurisdiction to adjudicate, but simultaneously restrict the power of those courts to perform the adjudicatory function in the manner they deem appropriate. Now, the scholars then explain why that first category, which this case clearly falls within when you're taking Federal courts out of the business entirely, raises no separation of powers problems. They say, quote, by wholly excluding the Federal court, Congress loses its ability to draw upon the integrity possessed by the Article III judiciary in the public's eyes. And so we think that gets to the core separation of powers concerns that are underlying the lines that this Court has drawn. It avoids any puppeteering concern that Congress is using the Article III, the judicial imprimatur, to give a merits judgment. It avoids any public misperception concern that this is an Article III resolution on the merits of the controversy. Kagan.  Kagan. Sotomayor, I guess I don't understand, Mr. Shah, how that helps you. I mean, doesn't this just exclude the power of the Federal courts? Shah. Yes. And so that's the permissible side of the line that the professors lay out. They say if you are excluding completely the Federal courts from adjudication, that does not raise the separation of powers problem. They rely on Professor Hart's dialectic for that proposition. They say the harder cases are like, sorry, yeah. But when you were looking at that, if you had a piece of legislation that said, in Jones v. Smith, Smith loses, that that would be unconstitutional. Right. And she has to say that, because nine of us said it. Yes. So then the question is, why is it different if Congress instead says, in Jones v. Smith, there shall be no jurisdiction, and Smith loses? Why is that different? So, Your Honor, if, in fact, what they're doing is taking away jurisdiction, they just say, there is no – so in your hypothetical, there is no jurisdiction. In Jones v. Smith, there shall be no jurisdiction, ergo, Smith loses. Right. Well, the reason why we think that statute is different is because of the first part of it. It's saying there is no jurisdiction. So when it says Smith loses, it's not in the same way that it was in the hypothetical in Bank Markazi, where all nine justices said that that would be problematic. And three reasons why it's different. First, in the Bank Markazi hypothetical, if Smith wins in a civil suit between Smith and Jones, that is a merits judgment that the Court had in mind. Presumably, if Smith wins, there is a merits judgment in the Court. Suppose the statute said, in order to ensure that Smith wins, there shall be no jurisdiction. Well, again, Your Honor, I guess I still – if what it's doing is asking the Court or taking away the – What it's doing is clear to everybody. In fact, it says that it's clear. What below? So I still think that is distinguishable from the hypothetical statute in Bank Markazi. And the reason is because of the – because it's taking away jurisdiction. So a couple reasons why it's different. One is a functional matter. The judgment is quite different. It's not a merits judgment. Smith is presumably not in the Bank Markazi hypothetical. But you're taking away jurisdiction in order to have a particular result in litigation. Right, Your Honor. But the result that you're getting is different than in Smith v. Wynn. Smith wins because – I don't think Smith much cares. Why would Smith care? Well, Your Honor, in Bank Markazi, Smith was the plaintiff. He cares a lot. Because if he wins, he gets an award of relief, and that relief has res judicata effect. That's very different from a dismissal for lack of jurisdiction in which there's no merits judgment, there's no award of relief, and there's no res judicata effect. It doesn't say anything about jurisdiction. And you are enlisting the courts. You're telling the court, you have to – you take this stamp and you stamp dismissed on it. And it doesn't say dismissed for want of jurisdiction. I suppose we'd have to figure out what the collateral consequences are, since the statute doesn't say. You are dragooning the court into doing something the court doesn't want to do. You're making them dismiss a case that's pending before them. Well, Your Honor, it – we're assuming – if we're assuming this is a jurisdiction stripping statute, that is, it is withdrawing jurisdiction, then the only thing the court can do is dismiss for lack of jurisdiction. And if that, enlisting the courts in that limited matter, is a problem, then that's true for 150 years of this Court's precedent. Well, that begs the answer – that begs the answer to the Hart and Wexler dialogue, that when the court – when Congress strips jurisdiction to achieve an otherwise unconstitutional result, that that's perfectly fine. Well, Your Honor – I think that's a very difficult question. Well, Your Honor, I think that question implicates different interests. It's not a separation of powers problem. I don't think for Congress to say a certain set of cases can't be within the Federal courts. If they're talking about equal protection cases and singling those out, that runs afoul of the equal protection clause. Well, is it – I understand your answer. But is it a separation of powers question if they say if the claim is separation of powers, the case – there is no jurisdiction? Yes, Your Honor. There – there, I grant you, we're not arguing that Congress can take away the Court's jurisdiction to adjudicate whether there is a separation of powers problem itself, the constitutional vial itself. And that's why we're here on here. We're not arguing that Congress has done or could – could do that. It can't prevent the Court from adjudicating whether the statute it has passed is constitutional. But that's not what's going on here. We're having a full airing of the claim. The question is, can they withdraw jurisdiction? And if, in fact, enlisting the courts, as you say, in that limited manner, violates separation of powers, well, that's true in the seminal withdrawal of jurisdiction case in McArdle, and 150 years of cases after that. In fact, in McArdle, the Petitioner made – Ginsburg. What about the answer to McArdle is, it was just a question of how you get habeas. There was another route. Congress had closed off one route, but it left open another. Well, Your Honor, I guess a couple of responses. One is the Petitioner in McArdle actually made the very same argument the Petitioner makes here, is that Congress was targeting my suit when it passed that statute. And the Court expressly addressed that argument and said, no, we're not going to look behind Congress's act. It describes a category of suits, and we're not going to ask whether Congress had some illicit motive of targeting your suit. That's my first response, Justice Ginsburg. The second response is, if, in fact, there's a claim that there's no other forum to bring this case, then maybe there is, as this Court said in Bank-Marcazi, there are other constitutional limitations. Maybe that's a due process problem. In fact, Petitioner raised a due process claim in the lower courts, and in a cert petition, this Court denied cert on the due process claim, so that is out of the case. We're strictly on separation of powers grounds, and there's no separation of powers problem in this Court withdrawing jurisdiction, including with respect to pending cases. That's what it did in McArdle. That's what it did in Assessors v. Osborne. That's what it did in Halliwell. That's what it did in the other courts.        Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. A lot of employment discrimination, because it does, it has a lot of employment discrimination suits filed against it. And so the CEO of this big corporation goes to Congress and says these suits are getting to be a real hassle, and so I'd like a piece of legislation. And Congress says, good enough. And it says, there shall be no jurisdiction over any employment discrimination suits filed against that corporation. All right, and in so doing, it knocks out all these employment discrimination suits that have been filed against that corporation. Is that constitutional? It may be unconstitutional, but not for failure of separation of powers, not a separation of powers violation. Maybe that is the type of class of one problem that this court noted in the court's opinion in Bank Markazian footnote 27. It said, look, if you're singling out a particular litigant for special disfavored or favored treatment, that's the class, maybe that's a class of one claim. So it's not a separation. So if this had said just David Patrick's suit, different case? Well, Your Honor, if Congress had singled out just Mr. Patrick's suit in the text of the statute, maybe they could have brought that sort of claim. I still think, based on this Court's decision in Bank Markazian that talked about Congress is free to legislate in a particularized manner, even with respect to particular cases. It's probably okay, but it would raise at least a harder question. But make no mistake, the statute here is about a class of cases. Now, I will grant you, it is a relatively narrow class of cases, suits that were relating to the Bradley property. And as it turned out- Justice Kagan just put, doesn't severely compromise the integrity of the courts. The courts are hearing cases against one class or against a large class of defendants, but not another class. And this, it seems to me, severely calls into question the integrity of the courts. And that's a separation of powers problem. Well, Your Honor, I agree with you everything up until that last part. I agree, if the Court was drawing lines that you could only sue these type of defendants and not other types of defendants, or singling out one company- But that's the hypothetical, and you said separation of powers is not involved. Right. I think that's an equal- It seems to me that this is intrinsically separation of powers. Well, Your Honor, I think that's an equal protection problem. And as this Court recognized in footnote 27, there are claims to deal with that. You can take an extra minute, because we're going to give your friend some rebuttal time. Sure, Your Honor. I guess what I was starting to finish up on was on the class of claims. It may be a narrow category, but just because it turned out that the only suit happened to be Patrick's, it would be an odd constitutional rule if on the day before they – if they pass the statute on the day before Patrick's suit, it's fine. On the day after Patrick's suit, it's not fine. And then if three other people happen to file suit, suddenly it's fine again. That is not a right sort of – that does not strike us as a sensible constitutional rule. Instead, you should look at the words that Congress enacted, which was trying to insulate a category of cases from this Court – from any Federal court exercising jurisdiction. That's precisely what Congress has done for over 150 years, dating back to McArdle and in a line of cases since then. If there are no further questions. Thank you, counsel. Three minutes, Mr. Gant. Thank you, Mr. Chief Justice. A few quick points. I'll try and run through them quickly. Justice Kennedy, I completely agree with you that there is a separation of powers problem posed by the hypotheticals that were posed. We shouldn't lose sight of the fact that separation of powers were designed in substantial part to protect an individual's rights and to protect an independent judiciary. What we would have here is if you affirm and uphold the Gun Lake Act, you will have judges looking over their shoulders wondering if they're going to be next in a case like this Court was in Patchak 1, where Congress says, we don't like the results. We're going to take the case away from the courts. We can dress it up using the language of jurisdiction, but it's still taking the case away from the courts and directing the outcome. Now, on the point, the distinction that the counsel for the respondents were trying to drive home, that somehow a direction to dismiss in 2B is different because it's not merits. I would refer to the Court to a unanimous decision from last year, CRST v. EEOC, where the Court found that the party that was not prevailing and that did not win on the merits in the EEOC case was nevertheless the prevailing party. The unanimous Court observed, the defendant, however, has fulfilled its primary objective whenever plaintiff's challenge is rebuffed, irrespective of the precise reason. As anyone who has ever been a plaintiff or represented a plaintiff knows, when the plaintiff's case is dismissed, the plaintiff has lost and the defendant has won. It could have different collateral consequences, race judicata and so on, but fundamentally when the plaintiff gets kicked out of court, they've lost. Mr. Pacek had that result from 2B. With respect to the relationship between 2A and 2B, 2A does one of two things here. It's either meaningless because all the work is done by 2B. If the suit relates to the Bradley property, it shall be dismissed. Or, as the House of Representatives argued on pages 3 and 20 of its brief, what 2A – 2B does is it implements 2A. This was an extraordinary assertion by the House of Representatives, which came in file dynamic as brief, and they said what they were really telling you is that what the Congress did in 2B was it decided what 2A means and then kicked the case out of court based on its own understanding while depriving this Court or any other Court of the opportunity to say what 2A means. Federal Respondents said they didn't know quite what some of the provisions in the Gunn-Lake Act means, except they do know that it prevents Mr. Pacek's case from going forward. This seems to me that they're uncertain about the meaning, except when it comes to its application to Mr. Pacek, only highlights the fact that Congress was trying to direct the outcome in Mr. Pacek's case. With respect to the hypotheticals that were posed to Mr. Shah by Justices Kagan and Kennedy, this case is no different, I think, than the hypotheticals you were posing. This is substantially like Smith wins. You can play around with the words. You can say we want Smith to win, therefore there's no jurisdiction. I don't think anyone here believes that Congress should be able to do that. So this is effectively the same thing. And finally, Justice Gorsuch, with respect to the Gonzales case that you were discussing with counsel for the Federal Respondents, in that case, both of the parties acknowledged that there was no dispute about jurisdiction. Thank you for the extra time. Thank you, counsel.